Lewis Biscopo for the petitioner and Hussam Ahmadi. This is a matter of two petitions reviewed that the court has consolidated. The first petition review involved a challenge to the immigration judges finding that the applicant was not eligible for asylum, withholding or conventure against torture because he was not credible and also because there was an issue of whether or not his application was filed timely. The issue regarding the application's timeliness, the government has conceded in their reply brief that the application was filed timely. The second petition review was based on the motion to the Board of Immigration Appeals regarding ineffective legal counsel by the client's original trial counsel. That was denied by the board and that was brought on the petition review and both cases consolidated. In looking at the first ---- Kennedy, if you were to win on the motion to reopen, do we have to reach the other issue? Or how do you view the relationship between the two issues as far as our job is concerned? Your Honor, you could if find that the ---- if you do find that the Respondent was credible, then you do not have to go to the second issue because if he is found credible, then your argument is, isn't that there's not sufficient discrepancy in the testimony, your argument is that the discrepancy comes from the written applications being false or mistaken because the wrong information was turned in. And that's the issue that we would agree, Your Honor, that it's almost impossible to find for the Respondent on the first petition review that was filed by the original trial counsel because it is based on the fact that he was not found credible and it ---- he was not found credible because of the performance of that trial counsel. I think ---- I'm trying to get to the same question, Judge Reinhart, is it seems to me, effectively speaking, number one is a pretty dead letter by the time it gets to the issues you're putting in front of us for number two. I would agree, Your Honor, that the second petition review is the important petition review because it goes to the heart of the matter. The heart of the matter is that his original trial counsel, Mr. Reed, who also filed the first petition review, his ---- his, let's say, advocacy was way below the standard, that it greatly affected the case in that he never prepared the applicant for the hearing. I mean, there is a statement by Mr. Reed that during the trial, this is after he has represented him for ten years ---- for two years, after he has filed both applications for asylum, and eight months after being told by the judge that the issue of resettlement is the most important issue in this case, Mr. Reed asked for a ten-minute recess in order to discuss with his client this issue because he says to the judge, I haven't had the opportunity to speak to him about it yet. He's been represented for two years at this time, Your Honor, and he's been told to brief this issue prior. There's no record in ---- there's no indication in the record that he actually did brief it as the judge required. But resettlement isn't your problem today. It's not the problem, but what it goes to is the issue, Your Honor, of whether or not Mr. Reed's conduct affected the outcome of this case. I got to tell you, I'm less impressed with that in the circumstance where your own brief said that your client didn't speak English and Mr. Reed didn't speak Farsi. They're not going to communicate effectively whenever they meet. They need somebody as a go-between. As I understand your client's argument, it's really that the go-between, the assistant who did speak Farsi, who was, I guess, himself Iranian, just put down a story that wasn't the same as your client's story, just made up facts. And as a result, the I.J. winds up saying, wait a minute, you tell one story here and one story here, I'm not going to believe this, and makes this adverse credibility determination. Absolutely, Your Honor. And what we're saying ---- What indication or what record have you submitted in your motion to reopen to suggest that what was put down by the legal assistant wasn't what the legal assistant understood from your client when they were interviewed? Mr. Hamadi, in a detailed affidavit that was submitted with his motion to reopen, details the facts that he did not meet with Mr. Reed other than shaking his hand one time at the office and at court, that he told his true story as to what occurred or what he attempted to testify to at his hearing of what happened to Mr. Reed's assistant, and that he did not read the application ---- pardon me, the application was not read to him in his native language, that he did not read it since it was not in his native language, that he did not meet with Mr. Reed. And I think it's important that Mr. Reed, in saying that he has not had the opportunity to speak to his client about one of the most important issues, admits that he's never spoken to him in two years about this issue. But they talk to each other even if they do speak. They don't speak the same language. Your Honor, as an immigration attorney, I, as many occasions, do not speak the language of my clients. But I have one of my assistants, whether it be a paralegal, a law clerk, or another attorney who works for me, sit there and translate with me. And that everything is done. It's not necessarily done without me in the room. And that's one of the duties of an attorney. He must know what his client's story is. So what you're suggesting is that if he had been a truly effective counsel, he would have, before the testimony, sat down with his client and gone over the application, translated into Farsi, so that Mr. Hamadi could have said, wait a minute, that isn't what I said. And all of the, then he could have gone in at least and said, instead of having to say it on the stand, this doesn't belong to me. This isn't my story. Absolutely, Your Honor. He should have at least done that. But more importantly, he, I don't even believe from the record, if you review it, that Mr. Reed even looked at that application prior to the hearing. At one point, he says he's perplexed by the fact that the Respondent is denying that he's converted to Christianity. But these are applications that Mr. Reed filled out, yet that same application says, by the Respondent, are you being persecuted because of religion? He answers, well, he not answers no, but he does not indicate that it's religious based, his persecution. But then two questions later, there's a story about him converting to Christianity. Mr. Reed, even though he signed those applications, both those applications are signed by Mr. Reed. Well, that's not inconsistent, as the I.J. seemed to think, that Mr. Hamadi was the one who was changing the story on the stand, not that it was Mr. Reed who hadn't. I mean, if your client tells you, as many witnesses often get on the stand, they say things that we as attorneys never expected them to say. Wait a minute. You just told me last week X, and now you're up there saying non-X. So what do we do with that kind of situation? Well, I think the problem, Your Honor, is that's the point where the attorney has to question his client, because at that point, there seems to be a conflict. The client is saying the application is false. That's not what I said. That application is prepared by the attorney in this case. It's signed by him. As the preparer, he is stating in his application, he has read this to the Respondent in his native language. At that point, if it's clear that the Respondent is disavowing an application that's been prepared and filed by his attorney, there is a conflict. And either the judge has to request, ask the Respondent some questions to determine the foundation of the application, or it's possible the judge, excuse me, the attorney has to ask further questions. Mr. Reed asked one question. Well, let's get down to at least one passage that troubles me, and I know the I.J. relied on this. And this is at 266 of the record, page 108 of the transcript. And he's saying, this is the I.J., I believe, questioning him. And he says, Your asylum application that you signed and swore to today, question number four, it says you were arrested in 1981. Were you arrested in 1981? Answer, I told you that for a short period of time, yes. Prior to 1983, I was arrested. Question here, sir, you said for one day or one week, right? Answer, 10 days, something like that. Question, now this says you were put in prison for two months in 1981. Is that not true? Answer, do you yourself remember in 1981 the difference between 10 days and two months that you were in jail? Question by the I.J., sir, this is, answer, or summer, let's say, on a vacation. Sir, this isn't a forum for you to ask me questions. Now, were you in prison for two months in 1981, sir? Answer, this belongs to 20 years ago. Question, do you know the answer to my question or not? Answer, there is a possibility because it could be 10 days, it could be three months. I don't remember vividly. Now, this is a part of my life that I don't want to remember each and every day. That doesn't sound like something that Mr. Reed had anything to do with. I would disagree and say it does because it shows that Mr. Reed had not prepared his client and adequately questioned him to determine all the facts and circumstances. The Respondent is trying to discuss an event that happened more than 20 years earlier. It appears that he's never been questioned about it or even asked about it by Mr. Reed. There's some things you're going to remember if they happen. I mean, just to continue where Judge Fischer stopped, sir, how many times did you escape from prison? I don't recall. Was it more than once? I don't even remember that I have escaped the prison. Now, I don't think it takes a lawyer's preparation of a client to remember whether or not you've ever escaped from prison. And the fact that he can't give an answer. And indeed, what gives me concern is that he has never said that I found in his declaration that the written applications filed were incorrect, were not his story. And here, when he's being faced with the inconsistencies, his response is, well, I don't remember if I've ever escaped from prison or not. I mean, that doesn't sound like someone who says, well, I never claimed I'd escaped from prison. Your Honor, I agree that occasionally his answers are not necessarily succinct. But I think what he is saying is, I don't remember ever saying I escaped from prison. And the only way it appears is on his application. The other issue, if I have one second, Your Honor, additional second, is that he does say, when asked about the religious issue, if it says it on my application that I've converted, it's not my application. And he's making a point that it's not what I said. Thank you. Good morning, Your Honor. Joseph Scherr for the Respondent Attorney General. We agree with what I understood counsel to say here at argument this morning, that credibility is what this case is about. And credibility really is the dispositive question. And it's not just a question of credibility. And in presenting his motion to reopen, it was counsel's and the Respondent's or the Petitioner's argument or burden to put forward support beyond his own word for his position that the applications submitted on his behalf were different than what he had told indirectly through a member of his counsel's staff, his counsel, in preparing the applications. Well, how is he supposed to go beyond his own word to say that what I told Mr. Tazzaruni is different from what Mr. Tazzaruni put down? Who else would know that? There are at least two possibilities, but three possibilities that come immediately to mind. One is Mr. Tazzaruni himself. Second, Your Honor, in the file maintained by Mr. Reed's office, there reasonably would appear or we can reasonably presume there would have been Mr. Tazzaruni's notes and drafts that might indicate what he was told. Or if those were not present in the file, that would be a fact that we would expect counsel to put forward in support of the application. But in fact, the only thing put forward in support of the application is the report and if I may refer to the record, Your Honor, at page 31 of the supplemental application, we have the report that Mr. Tazzaruni said that he prepared the applications based on the information provided by the respondent. Now, given that petitioner's story, obviously when he testified was different than what was prepared and given that it is apparent that counsel was surprised, we have nothing in the record that indicates that counsel was surprised. Another question is what case is that on a claim of ineffective assistance of counsel, you must provide more than the petitioner's affidavit? Your Honor, I don't know of a case that holds precisely that. Or that the affidavit is not sufficient. I'm sorry. I don't follow. Or that the affidavit is not sufficient. There's no authority for that proposition. I believe what I said was that in this case, Your Honor, and in the facts of this case where it is particularly the petitioner's credibility, there is the central issue. So that would require a new rule, either from us or from the BIA, that an applicant that the affidavit of the person claiming ineffective assistance of counsel is not sufficient. That is not the rule that I would contend, Your Honor. That is way too broad a statement. Given that the gravamen of the claim is that the finding of lack of credibility was based on an alleged or imputed misquotation, misrepresentation of what the petitioner said to his counsel or to his counsel's staff, that given the gross violations, the gross disparities that are in this record. But all of which depends on the claim, the motion for ineffective assistance. All those gross disparities, according to petitioner, are explained by what he wants the board to consider in the ineffective assistance motion. Certainly, Your Honor. And I don't see why this is any different from any motion for ineffective assistance where a petitioner says I wasn't prepared, counsel didn't do this, counsel didn't do that. You're saying that it's not enough for a petitioner to make that claim in order to have the board consider the motion, that he has to get information from the counsel he is accusing. In Lozada and the cases that follow it, and the cases that have adopted the board's approach in Lozada, all of them have said that it is incumbent on the petitioner who is asserting ineffective counsel that counsel be given an opportunity to respond to the assertion. And he did that in this case, didn't he? I don't agree with you, Your Honor. He didn't comply with Lozada? I don't agree that the response was sufficient. Now, granted, Your Honor. No, no. You said you have to comply. The counsel was dead. I mean, the problem here is Mr. Reed had died in the meantime. So he didn't comply with Lozada but couldn't because there was no counsel you could report to the State Bar. Yes, up to a point. We don't know in this record, and we don't know because Petitioner doesn't tell us, when it was that Mr. Reed died. I think we do know. I mean, at least it's pinned down. He was given information in Mr. Piscopo's declaration. He was trying to contact Mr. Reed's office. He was trying to be put off for a month or so. And then he was told in January 2004, informed that Mr. Reed had died a few days prior. So it sounds like fairly early in the attempt by Mr. Piscopo to obtain the file and get information, he was stonewalled. And if it turns out that Mr. Reed is fatally ill, then maybe it's not a surprise after the fact. But he learns before he would have anything to go to the State Bar on that Mr. Reed is no longer with us. No. So if that's the case, then, and there's nothing to suggest it's not, then I don't know how he could file a complaint with the State Bar. I agree with you that claiming the State Bar should not be required in this case, given that Mr. Reed died, and it would be a nullity in any event. But nonetheless, at no point during the period when Mr. Reed may well have been alive and in a position to respond do we know that Mr. Piscopo pointed out to him that what he was, what the issue was, was his alleged failure to meet with his client to go over the application to determine whether. He's trying to get the file from Mr. Reed's office. He's been newly hired. You're taking a case over from another attorney. That's not always the most cordial of events. And so I don't know that anybody could reasonably expect the new lawyer to say, by the way, my client tells me that you screwed up big time and you're going to be in big trouble. So why don't you just send me the file that I need to get the evidence of that? I mean, you're trying to get the file. Before you get the file, you learn the man is dead. So I'm not. Well, I'm not sure that's correct either. That is, before you get the file, you learn the man is dead. It is not entirely clear, again, because it appears that. His declaration says, on January 14, 2004, Ms. Garcia from my office went to the law office to get a copy of Respondent's file. At that time, we were informed by Mr. Al Tesseroni that Mr. Reed had died a few days prior. That's page 29 of the, I guess it's a supplemental excerpt. Yes. At the bottom. And that suggests, I mean, I understand your point, but I also think that this doesn't fit neatly in any pattern as to how you would ordinarily expect the specific shortcomings of the first attorney to be documented, because if by that time you learn that he's dead, you take another route. Well, Your Honor, if I may illustrate my point with a practical point, which is, let us assume hypothetically that the Court were to do what we don't want it to do and were to remand the case to the Board, perhaps ultimately the Board sends it back to the IJ, to make a determination. What is the IJ confronted with? He's confronted with a record that amply supports the original conclusion of the lack of credibility. Unless the petitioner is correct, and the reason for that is that the facts presented were not what he told the investigator or the building owner or whatever he was, this fellow. Legal assistant of some sort, Your Honor, apparently, at least as a matter of practice if not in form. Since we're running out of time, go ahead. I beg your pardon, Your Honor. I did not mean to talk over you. No, no. Go ahead. But my point is how, in the end, can you make that determination? And that determination depends on the word of the judge. The IJ may say, you know, under these circumstances, this is enough. Or he may say, you know, I would like you to present us with the material from the lawyer's file. You make an effort to get it. He may say any number of things. We really don't know. But you are running out now. Let me give you one more question. Yes, Your Honor. Okay. In the BIA's decision denying the motion, it explains why he thought, why it thought the counsel was competent. It says the record reflects that the Respondent's former counsel performed with sufficient competence. In this regard, we note that counsel submitted several documentary articles in support of the Respondent's claim. The counsel was knowledgeable and prepared at the hearing, discussing the issue of firm resettlement, that he filed a timely appeal, and that he submitted a timely brief. Those are the reasons they found him competent. That doesn't, they don't address the real complaint that Petitioner has. That counsel A, I mean, that A, the application did not reflect his views or the facts that he presented, or B, that he wasn't prepared by counsel. It says counsel was an able lawyer in his performance before the Board. But it doesn't address the issues that they're raising in the motion. I think, Your Honor, if I may venture to explicate a bit the Board's economy of words. Yes, well. The issue that was present to which they were speaking was that counsel was competently representing the client with the issues that were raised at the hearing and in counsel's appeal to the Board, the original appeal. That is, resettlement, timeliness, and so on. Right. The question of credibility. No, the question of the, whether the application did not represent the story that the Petitioner told, if you want to call him a legal assistant, whatever he happened to be. Translator at the least. Yeah, whatever. That's the basic complaint, and that he wasn't prepared for the hearing by counsel. Those are the two elements that basically make up the ineffective assistance claim. He didn't say that the counsel didn't perform well at the hearing. You know, the counsel, you know, maybe gets an A for his performance, but it doesn't say anything about whether counsel prepared the witness, even met with the witness before the hearing, or whether the application that counsel filed was an accurate application. Those things aren't mentioned by the Board. That is correct, Your Honor. Well, don't you think those are the things that we should ask the Board to consider? I think those are the things that the Board might have considered had they been properly presented by counsel in his motion for reconsideration. You don't think the motion for consideration raises those issues? I don't think the motion for reconsideration adequately raises them, because it depends on the testimony of Mr. Hamady. So you think the Board didn't address it because the affidavit wasn't supported? Correct, Your Honor. It didn't say that either, did it? It did not. Okay. Okay. Thank you, Your Honor. Thank you, counsel. Next case for oral argument is Edamati v. Gonzales. No, that's all taken out. Oh, sorry. That's not it. Let's go. Next case is Kutazi. I hope that's not in the order. Kutazi v. Las Vaginas Unified School District. Thank you, Your Honor.
judges: Reinhardt, Fisher, Clifton